# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| CURTIS C. DICK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-1601-B |
| | § | |
| J.B. HUNT TRANSPORT, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant J.B. Hunt. Transport's Motion for Summary Judgment (doc. 67), filed August 17, 2010. Also before the Court are certain ancillary matters, including Plaintiff's Cross-Motion for Summary Judgment (doc. 78), filed October 8, 2010, Defendant's Motion to Strike (doc. 92), filed October 15, 2010, Plaintiff's Motion to Strike (doc. 93), filed October 17, 2010, Plaintiff's Motion for Leave to Amend (doc. 99), filed October 26, 2010, and Plaintiff's Motion Request for Judicial Notice (doc. 110), filed January 31, 2011.

For the reasons stated below, the Court finds that Defendants' Motion for Summary Judgment should be and hereby is **GRANTED**. Additionally, the Court finds that Plaintiff's Motion for Leave to Amend should be and hereby is **GRANTED** as well. The Court **DENIES** Plaintiff's Cross-Motion for Summary Judgment, Defendant's Motion to Strike, Plaintiff's Motion to Strike, and Plaintiff's Motion Request for Judicial Notice.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

A.      *Underlying Facts*

This action arises from Plaintiff Curtis Dick's ("Dick") former employment as a truck driver with Defendant JB Hunt ("JBH"). Dick's tenure with JBH lasted from August 2005 to September 2008. Dick was not employed by JBH for the entirety of this three-year span, rather the two had an on-again, off-again relationship where Dick ended up working for five separate employment periods. The instant suit arises from facts involving the first and fifth employment periods. Dick is an African-American. (Pl.'s 2d Am. Compl. ¶ 7).

The first employment period began when JBH initially hired Dick on August 2, 2005. (Def.'s App in Supp. of Mot. Summ. J. ("Def.'s App.") 2-3). After four days on the job, Dick allegedly caused a preventable accident, striking a parked vehicle while driving a JBH truck. (Def.'s Br. in Supp. of Mot. Summ. J. ("Def.'s Br.") 2-8). Dick does not dispute that this accident occurred. (*See* Pl.'s Br. in Supp. of Resp. ("Pl.'s Br.") 5 ("[JBH] did not ask Plaintiff to submit for a drug test, which is common in the industry following an accident.")). Following the accident, Dick's first employment period with JBH ended. The parties dispute precisely who terminated the relationship. Dick contends that he quit to take another job, that JBH never asked him to submit to drug testing (which he contends is common industry practice following a preventable accident), and that JBH allowed him to stay on the road during the short period between the accident and his resigning. (*Id.*). In its Motion for Summary Judgment, JBH agrees that Dick walked off the job. (Def.'s Br. 4).

---

[1]The Court takes its factual account from those uncontested factual allegations contained in the parties' papers and pleadings. Any contested fact is identified as the allegation of a particular party.

At the same time, JBH maintains it ultimately terminated Dick. (*Id.*). By walking off the job, Dick refused to participate in an accident review. (*Id.* at 4; Def.'s App. 3). JBH then elected to conduct his accident review without him, concluding that his employment should be terminated. (Def.'s App. 3). Based upon these events, JBH then transmitted a message to Drive-A-Check ("DAC"), a private database that distributes driver information and history to companies subscribing to its services. (*Id.* at 3-4). In this message, JBH stated that Dick had been involved in a preventable accident, was "discharged," and would have to be reviewed before being rehired. (*Id.* at 3). The JBH communication to DAC forms the basis of Dick's defamation claim.

In February 2007, May 2007, and August 2007, JBH rehired Dick. (Def.'s Br. 5). Each time, Dick quit after a short time, and the parties do not point to any relevant conduct arising from any of these three employment periods. (*See id.*). The fifth and final time that JBH hired Dick was in September 2008. (*Id.*). This final employment period, lasting until March 31, 2008, forms the basis of Dick's Title VII and ADA claims. The parties agree to little, if any, of the relevant events and conduct surrounding this final period.

The parties strongly dispute the nature and quality of Dick's work during the fifth employment period. Dick contends that he had a good performance record throughout his relationship with JBH and cites to a 2009 JBH Company Driver Settlement Report as indicative of his continued good performance during this final period in particular. (Pl.'s Br. 5). Dick also contends that during the fifth employment period, he sent eight internal complaints to JBH higher-ups about safety related matters and Department of Transportation ("DOT") rules violations, to which he never received a response. (Pl.'s Resp. 2-3). JBH, on the other hand, alleges that Dick began having service and performance-related issues from the moment the fifth employment period

began. (Def.'s Br. 13). In support of this contention, JBH cites to several pieces of evidence, including: (1) a verbal warning given to Dick after he cut off another vehicle while changing lanes; (2) discipline meted out for service failures, violation of hours of service, incorrectly parking a load, and choosing to ignore warnings on electronic logs; (3) a three day suspension for violating company policy; (4) a verbal warning for being idle too often; (5) a written warning about another lane change complaint; (6) a written warning about failing to timely deliver a load; and (7) a second three day suspension. (*Id.* at 13-14). JBH also contends that Dick has admitted to several of these events and conduct at various points. (*See id.* at 13).

Perhaps the single most disputed event in this case is a phone call Dick made on February 17, 2009 to JBH Safety Representative Kevin Hartgrave. The parties agree that Dick contacted the Safety Department on or about that date, but that is the full extent of their agreement. Dick admits that he told Hartgrave that he was wanting to get professional help or a counselor to "talk [his] situation through." (Def.'s App. 86, 97). At the same time, he denies ever self-reporting mental instability or confessing to having a mental problem. (Pl.'s Br. 2, 4). JBH has a markedly different picture of what Dick told Hartgrave. JBH offers evidence that Plaintiff in fact expressly stated that he needed psychiatric treatment. (*See* Def.'s App. 210, 220-226). JBH company policy mandates that when a driver makes a statement that he wishes to seek mental treatment, the Safety Department representative speaking with the driver must immediately revoke the driver's driving privileges. (Hartgrave Dep. 13:22-14:18, Def's App. 212). Based upon his conversation with Dick, Hartgrave decided that Dick should no longer be cleared to drive. (*Id.* at 13:10-15:10). Dick contends that this determination was wrong, that his privileges should not have been revoked, and

that he should not have been placed on leave. (Pl.'s Br. 4). It is undisputed that Dick's driving privileges were in fact revoked.

The parties do not dispute that after receiving Hartgrave's Safety Maintenance Record entries, Richard Doarn, JBH's Haslet Operations Manager who was one of Dick's supervisors, placed Dick on personal medical leave. Doarn subsequently sent Dick a letter, dated February 17, 2009, informing him that he was being placed on leave because of his statement that he was "suffering mental instability" and "unable to complete [his] job functions," that he had earned six weeks of Personal Medical Leave, and that he would need to be released by his attending physician before he could return to work. (Def.'s App. 164). On February 18, 2009, Dick visited a licenced professional counselor who determined that Dick was currently fit for work but needed further sessions to deal with job-related stress in his life. (*Id.* at 136). The counselor sent JBH a letter containing this information on February 19th. That same day, JBH called Dick and informed him that he needed to undergo a DOT-mandated physical by a qualified physician before returning to work. (Def.'s Br. 11). JBH company policy required such a policy in order to conform with applicable state and federal regulations. (*See* Def.'s App. 158). JBH set up a DOT exam with a qualified physician, and Dick agreed to attend. (Def.'s Br. 11). However, when Dick arrived, he became suspicious that the physician was conspiring with JBH to fail him and left. (*Id.*).

The parties agree that Dick never received a DOT-mandated exam by a qualified physician afterwards. On several occasions, JBH representatives contacted Dick and informed him that he either needed to take such an exam and return to work or qualify his unpaid medical leave with a statement from a physician that he could not work. (*Id.* at 11-12). Dick did have his personal physician send a letter to JBH on March 6, 2009 that, like the letter from the counselor, indicated

that Dick was cleared to work. (Def.'s App. 139). Despite repeated additional warnings, Dick never received a DOT physical nor submitted a physician's statement that he could not work, and he was administratively terminated, per company policy, on March 31, 2009. (Def.'s Br. 13-14).

## B.    *Procedural History*

Dick filed three separate EEOC charges in late March and early April 2009, cumulatively alleging that he was discriminated and retaliated against on the basis of race and disability. (Def.'s App. 11-18). JBH alleges that the EEOC found no cause to believe that any of these alleged wrongs occurred. (Def.'s Br. 15). Dick also filed a Surface Transportation Assistance Act ("STAA") complaint with the Department of Labor against JBH, alleging that JBH discriminated and retaliated against him for lodging safety-related complaints. (*Id.*). An administrative law judge concluded that Defendant was justified in terminating Dick and that such termination was neither retaliatory nor discriminatory. (*See* Def.'s App. 227-42).

Dick filed the instant action on August 27, 2009 (doc. 1). He has since amended his complaint twice, the most recent being his Second Amended Complaint (doc. 24), filed February 4, 2010. JBH answered that Complaint on February 22, 2010 (doc. 28). After extensive and still continuing discovery disputes, JBH filed its Motion for Summary Judgment (doc. 67) on September 17, 2010. Plaintiff responded and cross-moved for summary judgment (doc. 78) on October 8th. JBH has not filed a Reply. Plaintiff has filed two Briefs in support of his Response and Counter-Motion for Summary Judgment (doc. 84 & 98).

## C.    *Other Pending Motions*

In addition to the parties' Motions for Summary Judgment, there are several other motions currently pending before the Court. Both parties have filed Motions to Strike portions of the other

side's summary judgment evidence. Dick moves to strike (doc. 93) all of the depositions offered by JBH on the grounds that he has not been allowed to participate in or even been notified of any of the depositions and that the depositions offered by JBH do not comply with FED. R. CIV. P. 28. (Pl.'s Mot. Strike 1-2). Dick filed a separate brief in support of this Motion (doc. 103), in which he further alleges that "the Officer" did not make an on-the-record statement, give a name and business address, or swear an oath as required by the Federal Rules. (Pl.'s Memo. in support of Mot. Strike 1). It is unclear to which deposition this last argument refers.

JBH responds that Dick's Motion to Strike is untimely (as it was filed more than 21 days after the filing of the depositions), that Plaintiff was notified of the Hartgrave Deposition and given an opportunity to attend, that FED. R. CIV. P. 30's requirements are met, and that Plaintiff should be sanctioned for frivolously and vexatiously increasing the costs of litigation. (Def.'s Resp. 1-4). Dick replies that he has never said that he was not notified or allowed to participate in the depositions, rather that he chose not to participate and realleges his argument that the depositions were not taken in accordance FED. R. CIV. P. 30(b)(5)(a). But this statement is contradicted in the very first sentence of his Motion to Strike, where he states "Plaintiff has not been allowed to or noticed to participate in any depositions." (Pl.'s Mot. Strike 1). His factual flip-flopping renders him wholly without credibility as to his Motion to Strike. Furthermore, the Hartgrave Deposition, the only deposition provided in JBH's Appendix, wholly comports with the requirements of Rule 30, and specifically Rule (b)(5)(A). Accordingly, the Court hereby **DENIES** Plaintiff's Motion to Strike.

JBH has also filed to Motion to Strike (doc. 92), asking the Court to strike Dick's Brief in Support of His Response and Counter-Motion for Summary Judgment (doc. 84), his Appendix filed with the Brief (doc. 85), and his Amended Appendix (doc. 87-91). JBH contends that while Dick

timely filed his Response (doc. 78) to JBH's Motion for Summary Judgment, these other documents were filed well after the deadline for submitting his response and Dick has shown no good cause for his late filing. (Def.'s Mot. Strike 1-2). JBH also contends that even if Dick's amended appendix is allowed by the Court, portions of the appendix are inadmissible. (*Id.* at 2). However, because the Court finds summary judgment for JBH is proper even considering all of Dick's late filings, it need not consider the merits of JBH's Motion at this time, and Defendant's Motion to Strike is therefore **DENIED as moot**. For the same reason, Dick's later filed Motion for Leave to Amend Appendix in Support of Plaintiff's Response (doc. 99) is hereby **GRANTED**, and the Court looks to this Amended Appendix as Dick's evidence offered to defeat Summary Judgment.

Dick also filed a Motion Request for Judicial Notice (doc. 110) on January 31, 2011, asking the Court to take judicial notice of the fact that he resigned and was not terminated. Dick cites to the Declaration of JBH employee Juston Ramirez and his own Second Amended Complaint as indicating that he did in fact resign and argues that the Court should take judicial notice of his resignation for efficiency and economy's sake. Under Fed. R. Evid. 201(b), "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The Court disagrees that judicial notice of Dick's resignation is proper. The Ramirez Declaration upon which he relies provides that while Dick resigned or walked off the job, JBH company policy nevertheless required that his conduct go before an accident review board, the review board decided that his employment should be terminated, and he was subsequently "discharged." (Ramirez Dec. ¶¶ 5-6, Def.'s App. 3). Accordingly, Plaintiff's Motion Request for Judical Notice is **DENIED**.

Finally, Dick has also filed a Motion for Sanctions (doc. 60), arguing that certain communications between JBH and the Court were improper. Because this Motion does not pertain to the parties' Motions for Summary Judgment, it is dealt with in a separate order. Thus, the only matters left for the Court's consideration are the parties' Motions for Summary Judgment. These Motions being ripe, the Court now turns to the merits of its decision.

## II.

## LEGAL STANDARD

*A. Summary Judgment*

The purpose of summary judgment is "to enable a party who believes there is no genuine dispute as to a separate fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Accordingly, Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[2] The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the

---

[2]The Court cites to the amended Rule 56, which became effective on December 1, 2010. This amendment governs both any action filed after December 1, 2010 and any proceeding in an action pending as of December 1, 2010, unless the Supreme Court specifies otherwise or a court determines application of the amendment would be infeasible or unjust. FED. R. CIV. P. 86(a). The Court sees no reason why the amendment should not govern this case. Accordingly, all citations to Rule 56 in this Order are to the amended version of the Rule effective as of December 1, 2010.

non-movant ultimately bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Rather, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Id.* When the movant bears the burden of proving an affirmative defense at trial, "it must establish beyond dispute all of the defense's essential elements." *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) (citing *Martin v. Alamo Cmty. Coll. Dist.*, 35 F.3d 409, 412 (5th Cir. 2003)).

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). Factual controversies regarding the existence of a genuine issue for trial must be resolved in favor of the non-movant. *Little*, 37 F.3d at 1075. Nevertheless, a non-movant may not simply rely on the Court to sift through the record to find a fact issue, but must instead point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Moreover, the evidence the non-movant does provide must raise more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). This evidence must be such that a jury could reasonably base a verdict in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075.

B.     The *McDonnell Douglas Burden Shifting Framework*

In the instant action, Dick has asserted discrimination and retaliation claims under Title VII and the ADA. The Court employs the *McDonnell Douglas* burden shifting framework to analyze all such claims.[3] *See Grimes v. Tex. Dep't of Mental Health and Retardation*, 102 F.3d 137, 140 (5th Cir. 1996) (applying the *McDonnell Douglas* framework to discrimination claims under Title VII); *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir. 2000) (applying the *McDonnell Douglas* framework to discrimination claims under the ADA); *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (applying the *McDonnell Douglas* framework to retaliation claims under Title VII). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination or retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Upon such a showing, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory or nonretaliatory reason for the challenged employment decision. *Id.* If the defendant is able to articulate such a reason, the burden accordingly shifts back to the plaintiff to show such reason to be merely pretext for discrimination. *Id.* at 804-805.

According to the Supreme Court, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 148 (2000). But an inference of intentional discrimination is not mandatory in such instances. The *Reeves* Court recognized that there might be times where, "although the plaintiff has

---

[3] When a plaintiff offers competent direct evidence of discrimination or retaliation, the Court need not evaluate the evidence through the *McDonnell Douglas* framework. *Moore v. U.S.D.A.*, 55 F.3d 991, 995 (5th Cir. 1995). Dick does not contend that he has direct evidence of discrimination and retaliation, and thus the *McDonnell Douglas* framework necessarily applies.

established a prima facie case and set further sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id.*

<h1 style="text-align:center">III.</h1>

<h2 style="text-align:center">ANALYSIS</h2>

Dick brings claims of race discrimination and retaliation under Title VII, disability discrimination under the ADA, and libel under Texas law against JBH. (Pl.'s 2d Am. Compl. ¶¶ 28-62). JBH moves for summary judgment on each of these claims. JBH first argues that the doctrine of judicial estoppel bars Dick from now bringing his race and disability discrimination claims because in a previous proceeding he admitted that he was suspended, placed on leave, and terminated because of safety-related complaints. (*See* Def.' Br. 17-22). However, because the Court finds that summary judgment is proper as to each of Dick's claims when examined separately on the merits, it need not address JBH's judicial estoppel argument at this time. The Court notes in passing, however, that the standards of judicial estoppel are extremely difficult to meet where, as here, the party to be estopped did not succeed on his claims in the prior proceeding. *See New Hampshire v. Maine*, 532 U.S. 742, 750-51 (U.S. 2001). The Court turns to the parties' arguments for and against each of Dick's claims below.

A.    *Race Discrimination under Title VII*

Dick alleges that JBH "was treated disparately by his Caucasian manager" in violation of Title VII. (Pl.'s 2d Am. Compl. ¶ 45). In support of his claim, Dick cites several purportedly discriminatory acts. First, he points to a statement by Operations Manager Richard Doarn, who, when presented with a request by Dick to correct certain safety issues, told Dick that "for certain its not going to be anyone like you to change the way I do things here." (*Id.*). Dick also contends that

he and another African-American man were subjected to discipline for washing JBH trucks, while Caucasian drivers doing the exact same thing had no problems. (*Id.* at ¶ 46). Dick also says that he sent JBH several certified letters concerning Doarn's discriminatory acts, but that these were never responded to or addressed. (*Id.* at ¶ 47). Finally, Dick alleges that JBH knew that Doarn was treating him disparately, yet failed to do anything. (*Id.* at ¶ 52).

Title VII protects employees against discrimination based upon their race. *See* 42 U.S.C. § 2000e-2. Specifically, Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Id.* § 2000e-2(a)(1). Under the *McDonnell Douglas* burden shifting framework, a plaintiff may prove a prima facie case of discrimination under Title VII by showing that he "(1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably." *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004). If the plaintiff is able to build a prima facie case of discrimination, the burden the shifts to the defendant, who must provide a legitimate, nondiscriminatory reason for its actions. *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). If the defendant does make such a showing, the presumption of discrimination disappears, and the plaintiff has the opportunity to provide evidence that the defendant's reason is untrue and merely a pretext for discrimination. *Id.*

JBH moves for summary judgment on Dick's race discrimination claim arguing that Dick has failed to provide any evidence that he was treated differently than other similarly situated employees

and thus that he has failed to make a *prima facie* showing of race discrimination under Title VII. (Def.'s Br. 23). Alternatively, JBH contends that even if Dick has raised a *prima facie* case of race discrimination, he nevertheless fails to present any evidence of pretext to overcome JBH's legitimate, nondiscriminatory reasons for terminating him. (*Id.*). Dick does not directly respond to these contentions, but instead merely realleges certain facts from his Complaint.

The Court agrees that Dick has failed to present any evidence that he was treated differently than other similarly situated employees and thus has failed to raise a *prima facie* case of race discrimination. Of the purported discriminatory acts committed by JBH and its representatives, Dick only expressly asserts that he was treated differently than other employees in one, the truck washing incident where JBH disciplined Dick and another African-American but not Caucasian drivers. Even then, the mere allegation in his Complaint that he and another African-American were treated differently than Caucasian employees by itself is insufficient to survive summary judgment. Instead, Dick must "go beyond the pleadings" and support his allegation with "specific evidence" in the record. *See Little*, 37 F.3d at 1075; *Ragas*, 136 F.3d at 458. Indeed, with respect to all of his alleged bases of his disparate treatment claims, Dick does not cite to, nor after a careful review of his appendix could the Court find, any evidence that indicates how JBH treated a person of a different race, let alone how that treatment compares to Dick's treatment. In other words, Dick offers no admissible evidence that drivers who were not African-American were not suspended for similar conduct, were not placed on medical leave under similar circumstances, or were retained as employees despite their six weeks of personal medical leave expiring. Because Dick has failed to present any evidence that other similarly situated employees not in his protected class were treated more favorably, he has failed to raise a question of material fact as to an essential element of his

*prima facie* claim for race discrimination.  Accordingly, Defendant's Motion for Summary Judgment as it relates to Dick's race discrimination claim under Title VII is **GRANTED**.  Because the Court finds that summary judgment is proper on the basis of Dick's failure to present evidence as to his *prima facie* race discrimination claim, it is unnecessary to examine the parties' arguments concerning pretext at this time.  The Court notes, however, that JBH would most likely succeed on this argument as well under reasoning similar to that discussed in the disability discrimination and Title VII retaliation sections below.

B.      *Discrimination under the ADA*

Dick also alleges that JBH discriminated against him on the basis of a perceived disability in violation of the ADA.  Dick contends that JBH placed him on no pay personal leave status after its representatives concluded that he had a serious medical condition.  (Pl.'s 2d Am. Compl. ¶ 31).  He further contends that JBH wrongfully required that he submit to a Department of Transportation physical before returning to work, which he refused to undergo.  (*Id.* at ¶¶ 30, 32, 34).  He maintains that a DOT physical was not required by either the Federal Motor Carrier Safety Administration or company policy.  (*Id.* at ¶¶ 32, 33).

JBH moves for summary judgment on Dick's disability discrimination claim as well, arguing that it did not regard Dick as disabled and that even if it did, Dick has failed to present any evidence that its legitimate, non-discriminatory reasons for placing him on leave were pretext.  Dick responds that he should never have been placed on leave in the first place, that while he did call JBH's safety department and seek medical assistance, he never confessed to having a mental problem, and that the company's "main objective was to end [his] employment . . . by any options available."  (Pl.'s Br. 2-4).

*Prima facie* case of disability discrimination

The ADA prohibits discrimination because of a disability in regards to hiring, advancement, or discharge of an employee, so long as that employee is a qualified individual with a disability. 42 U.S.C. § 12111(4). To establish a *prima facie* case of discrimination under the ADA's *McDonnel Douglas* framework, Dick must present evidence that "(1) he is disabled; (2) with reasonable accommodations, he is qualified for the position; and (3) he suffered an adverse employment decision based on his disability." *Dillon v. Roadway Express*, 129 F. App'x 893, 896 (5th Cir. 2005) (citing *Still v. Freeport-McMoran, Inc.*, 120 F.3d 50, 51-52 (5th Cir. 1997)). In terms of the first element, the ADA defines "disability" to mean "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

The only argument JBH makes with respect to Dick's *prima facie* case is that it never regarded him as disabled. (Def.'s Br. 26-28). At several points, Dick has indicated that he is not in fact disabled, nor is there any evidence before the Court of any record of a mental disability. Thus, the only way for Dick to show that he is "disabled" under the first element of his *prima facie* case is to show that JBH regarded him as disabled. JBH contends that it never made a determination whether or not Dick was disabled, it merely followed company protocol when certain flags were raised. (*Id.* at 26). Furthermore, JBH argues, "*bona fide* concerns with worker safety cannot be deemed or found to be prohibited under the ADA, amended or otherwise." (*Id.* at 27 (quoting Wurzel v. Whirlpool Corp., No. 3:09CV498, 2010 WL 1495197, at *7 (N.D. Ohio Apr. 14, 2010)). The fact remains, however, that JBH regarded Dick's condition as warranting temporary leave. Absent direct evidence of JBH's purposes, determining why JBH put him on leave (*i.e.*, whether it actually

perceived him as disabled or merely followed company protocol) is necessarily a question of intent for which the *McDonnell Douglas* is specially designed. Thus, the Court finds that the more fitting method of analysis here is the later steps of the *McDonnell Douglas* framework.

ii.    <u>JBH's articulated non-discriminatory reasons</u>

Once Dick makes his *prima facie* showing, "the burden shifts to the defendant–employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir. 2000). JBH's burden is one of production; "[i]f the employer produces any evidence 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action,' then the employer has satisfied its burden." *Daigle v. Liberty life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993)). In determining whether this burden is satisfied, the Court's analysis "can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

The only adverse employment actions that occurred after Dick's conversation with the safety department were his forced medical leave and ultimate termination. JBH has articulated a nondiscriminatory reason for the medical leave and termination and supported its explanation with evidence. JBH proffers that Dick was placed on leave because his unsolicited statements led one of its safety representatives, Kevin Hartgrave, to conclude that Dick was experiencing mental issues. (Def.'s Br. 29). While Dick argues that he never confessed to having a mental problem, he does concede to making the phone call and to requesting that JBH send him "to a physician that deals with whatever mental problems they claim [I have]." (Pl.'s Br. 3-4). JBH contends that under company policy, a safety representative must immediately place a driver on medical leave when he

makes such comments. (Def.'s Br. 29). JBH further offers evidence that company policy required that before returning to work after being placed on such leave, a driver had to pass a DOT-qualifying exam. (*Id.* at 28; Def.'s App. 87). When Dick did not pass such an exam before his allotted six weeks of medical leave expired, he was fired, once again as required by company policy. (Def.'s Br. 28; Def.'s App. 116-18, 157-58, 163-64). Accordingly, the Court finds that JBH has met its burden to articulate a legitimate, nondiscriminatory reason for these adverse employment actions.

### iii. Pretext

Once the employer meets its burden of production, "the shifting burden scheme is abandoned and becomes irrelevant. The employer's intent is a question of fact, for which the plaintiff carries the burden of persuasion." *Daigle*, 70 F.3d at 396. Dick then has the opportunity to demonstrate that JBH's proffered reasons are false and pretext for discrimination. *Hicks*, 509 U.S. at 515-16. "A jury issue will be presented and a plaintiff can avoid summary judgment if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that the plaintiff's disability was a determinative factor in the actions of which plaintiff complains." *Donahue v. Melrose Hotel*, No. 3:95-CV-2630-R, 1997 WL 148012, at *8 (N.D. Tex. March 26, 1997). This burden is met where the plaintiff shows "that the employer's proffered explanation is unworthy of credence." *Reeves*, 530 U.S. at 143. The Court may consider evidence put forward as part of the *prima facie* case as well as any additional evidence of pretext. *Id.*

Dick admits that he made the phone call and that he never completed a DOT physical, but he argues that he never should have been placed on leave in the first place or forced to complete the DOT physical before returning to work. (Pl.'s Resp. 2; Pl.'s Br. 2-5). Thus, although Dick never

expressly contends that JBH's articulated reasons for his forced medical leave and termination are pretext for discrimination, one could easily construe his contentions that he was improperly placed on leave and forced to complete a DOT physical before returning to work as arguments of pretext. At the same time, just because Dick might have implicitly raised these arguments, that alone is once again not enough. The fact remains that Dick has presented zero evidence to support any contention that JBH's reasons for placing him on medical leave and ultimately firing him were anything other than legitimate and in accordance with company policy.

Indeed, even if, as Dick contends, JBH wrongly interpreted federal regulations and its own company policy, that alone would not be enough to show pretext. The Fifth Circuit has instructed that "[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995). Dick does not deny that he called JBH safety representatives, told them that he wanted to be sent to a "physician that deals with whatever mental problems they claim [I have]," and refused to take a DOT physical that would have allowed him to return to work. (*See* Pl.'s Br. 2-5). Dick has failed to meet his burden of showing pretext because he has not presented any, let alone substantial evidence that JBH's proffered reason is pretext for discrimination. *See Donahue*, 1997 WL 148012 at *8 ("[I]f the evidence put forth by the plaintiff to establish the prima facie case and to rebut the employer's reasons is not substantial, a jury cannot reasonably infer discriminatory intent, and summary judgment is appropriate."). Accordingly, the Court **GRANTS** JBH's Motion for Summary Judgment on Dick's claim for discrimination under the ADA.

C.      *Retaliation under Title VII*

Hidden within Dick's Title VII race discrimination claim is a Title VII retaliation claim as well. As best the Court can tell, Dick alleges that after he reported certain discriminatory conduct via certified mail, JBH retaliated against him by suspending him, placing him on leave, and ultimately terminating him. (*See* Pl.'s 2d Am. Compl. ¶¶ 47, 52).

i.      *Prima facie* case of retaliation under Title VII

In addition to its prohibitions against discrimination, Title VII makes it unlawful for an employer to retaliate against an employee for opposing any unlawful discrimination practice. *See* 42 U.S.C. § 2000e-3. Under the *McDonnell Douglas* burden shifting analysis, a plaintiff must first set out a *prima facie* case of retaliation, showing (1) that he engaged in protected activity, (2) that he suffered an adverse employment action, and (3) that a causal link existed between the protected activity and the adverse employment action. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).

A plaintiff engages in a "protected activity" when he has either (1) "opposed any practice made an unlawful employment practice by [Title VII], or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000) (quoting 42 U.S.C. § 2000e-3(a)). To show that he opposed an unlawful employment practice, a plaintiff must demonstrate that he had a "reasonable belief that the employer was engaged in unlawful employment practices." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007).

The term "adverse employment action" in the context of retaliation claims is interpreted to mean any action a reasonable employee would find materially adverse so as to discourage the making or supporting of a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53,

68 (U.S. 2006); *King v. Louisiana*, 294 F. App'x 77, 84 (5th Cir. 2008). Further, "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).

In moving for summary judgment on Dick's Title VII retaliation claim, JBH first argues that Dick has not met his burden of demonstrating that there could be a causal link between his first suspension or leave placement and any protected activity. (De.'s Br. 31-32). JBH contends that Dick has provided no evidence that Dick engaged in any protected activity before his first suspension and thus cannot establish a causal link between any protected activity and that first suspension. (*Id.* at 31). JBH further argues that the testimony of Kevin Hartgrave, the JBH safety representative that spoke with Dick, indicates that Hartgrave had never spoken with anyone at JBH about Dick before, nor did they pressure him to remove Dick's driving privileges—instead, he was acting based on company policy. (*Id.* at 31-32). Dick does not directly respond to these arguments.

In determining whether a causal link existed between the protected activity Dick engaged in and the adverse employment action he suffered, the Court must first determine what potential protected activities and adverse employment actions Dick has pled. In terms of adverse employment actions, the only potentially relevant actions Dick are his original suspension after wrecking in 2005, his two suspensions during his final employment term, his forced medical leave during this term, and the ultimate termination of this term. Neither party explicitly points to any activity that constituted a protected activity under Title VII. The only actions that the Court could find that might fall under this category were the certified letters Dick sent to JBH management complaining of discrimination.

The Court agrees with JBH that Dick has offered no argument, let alone admissible evidence, that he engaged in any protected activity before his first suspension in 2005. (*See* Def.'s Br. 31). Thus, no causal nexus could possibly exist between the letters sent at a later date and the first suspension, and the only adverse actions under which Dick could recover would be those involving the final employment period. While JBH argues that Dick similarly fails to present evidence of a causal relationship between the certified letters and the two suspensions, forced medical leave, and termination, the Court once again finds that this argument is better suited for analysis under the *McDonnel Douglas* framework. JBH's arguments again revolve around its intent in choosing to take the actions Dick complains of. The only argument or evidence that it offers in support of its contention that there is no causal link is that one of its own employees has said that he had legitimate, non-discriminatory reasons for the actions he took. Once again, however, these arguments are better suited for analysis under *McDonnel Douglas*.

    ii.       JBH's articulated non-discriminatory reasons

JBH alternatively argues that even if Dick has sufficiently set out a *prima facie* case of retaliation under Title VII, he has nevertheless presented no evidence of pretext that would overcome JBH's legitimate, non-discriminatory reason for his suspensions, forced medical leave, and ultimate termination. Again, Dick does not directly respond. JBH offers similar nondiscriminatory reasons for its actions as previously accepted by the Court in the context of Dick's disability discrimination claims above: that Dick was suspended for performance related issues, that he called Corporate Safety and asked to see a doctor for mental issues, that per company policy the safety representative removed his driving privileges, which resulted in his being placed on medical leave, and that per company policy he was ultimately terminated because he refused to take a DOT

physical within his allotted six weeks of leave time.  (Def.'s Br. 32).  Once again, the Court finds that

JBH has met its burden to articulate a legitimate, nondiscriminatory reason for these adverse

employment actions.

iii.   Pretext

Dick makes no direct argument that JBH's reasons for these employment actions are pretext.

Again, however, one could easily read his Response and Brief in Support as implicitly arguing that

if these adverse actions were not taken for purposes of discriminating against his disability (as

discussed above), they were alternatively taken for purposes of retaliating against his reporting race

discrimination in the certified letters.  At the same time, just because the purported basis for pretext

may be different, the exact same analysis applies to retaliation as disability discrimination because

Dick once again fails to offer any evidence that JBH's actions were pretextual.[4]  Accordingly, JBH's

Motion for Summary Judgment as it relates to Dick's retaliation claim under Title VII is

**GRANTED**.

D.   *Libel*

Finally, Dick also brings a claim of libel against JBH, alleging that JBH (1) provided

knowingly false written statements to DAC that he had been "discharged" when in fact he had

resigned and (2) knowingly submitted false documentation to the EEOC that he had been in an

---

[4] So too would any claim for retaliation under the ADA fail.  Retaliation under the ADA follows
the *McDonnell Douglas* framework.  *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999).  To make
out a *prima facie* case of retaliation under the ADA, a plaintiff must show: 1) engagement in an activity
protected by the ADA; 2) an adverse employment action; and 3) a causal connection between the
protected activity and the adverse action.  *Jordon v. Dallas Area Rapid Transit*, No. 3:04-CV-205-B, 2005
WL 440404, at *5 (N.D. Tex. Feb. 24, 2005).  Even assuming Dick has made a *prima facie* case, however,
he has offered no evidence of pretext that could overcome JBH's articulated, nondiscriminatory reasons
for its action.

accident. (Pl.'s 2d Am. Compl. 54, 56; Pl.'s Br. 5-6). Dick contends that he has been denied employment by other companies based on these actions.

In order to succeed on a claim for libel under Texas law, a plaintiff must show that (1) the defendant published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Truth is a complete defense to defamation. *Randall's Food Mkts. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995).

JBH moves for summary judgment on Dick's libel claims, contending that any claim based upon statements made during the EEOC proceedings is privileged and cannot serve as the basis for a libel claim and that any claim based upon statements made to DAC either is time-barred, fails because the statements were truthful, or fails because the statements are privileged. (Def.'s Br. 32-42). Dick responds that his libel claims are neither privileged nor time-barred and that the statements made to DAC were indeed false. (Pl.'s Br. 5-7). For ease and clarity's sake, the Court will exam Dick's two separate bases for his libel claim separately.

> i.     Statements made to the EEOC

Dick seems to admit that his libel claim based on JBH's statements to the EEOC fail as a matter of law. (*See* Pl.'s Resp. 3 ("Now, it appears as there is a provision within law that allows the defendant to make any statements it wishes in the EEOC investigation that can't be used in these matters.")). Nonetheless, out of an abundance of caution, the Court finds it best to briefly address this claim. Written and oral statements made during the course of judicial proceedings, including pre-trial proceedings, are privileged and may not be raised in a resultant libel action under Texas law.

*Bird v. W.C.W.*, 868 S.W.2d 767, 771 (5th Cir. 1994); *Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 912 (1942) ("Any communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot constitute the basis of a civil action in damages for slander or libel."). Even potentially perjured testimony is absolutely privileged and cannot form the basis of a subsequent action for libel. *Ross v. Arkwright*, 892 S.W.2d 119, 132 (Tex. App.–Houston [14th Dist.] 1994, writ denied); *Chandler v. Gillis*, 589 S.W.2d 552, 554 (Tex. Civ. App.—El Paso 1979, writ refused n.r.e.). This absolute privilege applies to a host of quasi-judicial proceedings before "governmental executive officers, boards and commissions which exercise quasi-judicial powers." *Attaya v. Shoukfeh*, 962 S.W.2d 237, 239 (Tex. App.—Amarillo 1998, pet. denied). In order to be considered "quasi-juducal," the person or entity presiding over the proceeding "must have authority to redress grievances to which it takes cognizance." *Id.* Proceedings before the EEOC are therefore quasi-judicial proceedings, statements from which parties are entitled to absolute privilege. *See Schwager v. Telecheck Servs., Inc.*, No. 14-01-00099-CV, 2002 WL 31995012, at * 6 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Accordingly, Dick may not bring a libel claim based upon representations made during those proceedings, and JBH's Motion for Summary Judgment with respect to that libel claim is **GRANTED**.

      ii.    <u>Statements made to DAC</u>

     Of all Dick's claims, his libel claim based on JBH's statement to DAC that Dick was "discharged" receives the greatest attention from the parties. JBH first contends that this claim is time-barred because Texas has a one-year statute of limitations for libel claims and JBH sent the information to DAC on August 16, 2005, over three years before Dick filed suit. (Def.'s Br. 35-36). Dick responds that this cause of action did not accrue for limitations purposes until April 2009,

when JBH resubmitted the information to DAC. (Pl.'s Resp. 3; Pl.'s Br. 5-7). JBH does not respond. While the evidentiary basis of Dick's assertion is unclear, JBH's resubmitting of the statement in April 2009 would cause the statute of limitations to start anew. Instead of pouring through the parties' appendices in search of an evidentiary basis for this assertion and because summary judgment is proper on other grounds, the Court need not address the parties' arguments as to timeliness, limitations, or the single publication rule at this time.

JBH next contends that it has an absolute defense to Dick's claims because the statements it made to DAC were truthful. (Def.'s Br. 38-40). Dick responds that they were not truthful, as he resigned and was not "discharged." (Pl.'s Br. 5-6). Dick further points to the Declaration of Juston Ramirez, a former supervisor of Dick, who testified that Dick quit and walked off the yard. (Pl.'s Br. 5; *see* Ramirez Dec. ¶ 5, Def.'s App. 3). Importantly, this same Declaration also provides that after Dick walked off the job, a group of JBH higher ups held an accident review meeting where it was decided that due to Dick's participation in a preventable accident, short tenure with the company, and some other performance issue, his employment should be terminated. (Ramirez Dec. ¶ 6). Again, however, because the Court finds that summary judgment is proper on other grounds, it need not examine this argument in detail and withholds judgment at this time.

JBH's final argument is that even if the statements it made to DAC were false, JBH is protected by a qualified privilege for statements made by employers to other persons or entities having a common interest in this employment information. (Def.'s Br. 40-42). Dick does not directly respond to this contention. In Texas, "[a] communication on a subject in which the author or the public has an interest, or with respect to which the author has a duty to perform to another owing a corresponding duty, may constitute a qualified or conditional privilege." *Duffy v. Leading*

*Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Marathon Oil Co v. Salazar*, 682 S.W.2d624, 630 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.)).  In the employment context, this means that statements about an employee made by a former employer to a prospective employer or another with a common interest fall within this privilege as well.  *Id.*; *Vincent v. Comerica Bank*, No. H-05-2302, 2006 WL 1295494, at *7 (S.D. Tex. May 10, 2006).  The privilege would therefore naturally also extend to statements made by former employers to employment services to which they subscribe for purposes of sharing employment information for hiring purposes, such as DAC.  (*See* Pl.'s Br. 5-6; Ramirez Dec. ¶ 7).

The privilege is qualified in that it protects all communications described above unless actual malice is shown.  *Duffy*, 44 F.3d  312-13.  With respect to a defamation claim, actual malice does not refer to "ill will," rather it refers to "the making of a statement with knowledge that it is false, or with reckless disregard of whether it is true."  *Id.* at 313 (quoting *Marathon Oil*, 682 S.W.2d at 631).  Under Texas defamation law, "'[r]eckless disregard is defined as a high degree of awareness of probable falsity, for proof of which the plaintiff must present 'sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.' An error in judgment is not enough."  *Id.* (quoting *Carr v. Brasher*, 776 S.W.2d 567, 571 (Tex. 1989)).  In federal court, the plaintiff is responsible for raising a genuine question of material fact as to malice in order to avoid summary judgment on his libel claims.  *Vincent*, 2006 WL 1295494, at *8 (citing *Duffy*, 44 F.3d at 313-14).

Dick has not provided any evidence of actual malice in the instant case: to the contrary, the only evidence provided to the Court indicates that the JBH representatives who conducted the accident review believed they were discharging him in accordance with company policy and that the

any statement thereafter made to DAC that Dick was "discharged" was believed to be true. *See Crouch v. J C Penney Corp.*, 337 F. App'x 399, 403 (5th Cir. 2009). Even assuming that the statement made to DAC was false, the falsity of a statement alone is not enough to create an inference of actual malice. *Vincent*, 2006 WL 1295494, at *9 (citing *Duffy*, 44 F.3d at 314). Instead, Dick must demonstrate that JBH at least "entertained serous doubts as to the truth of the communication." *Id.* There is simply no evidence in the Record that JBH or any of its representatives acted with actual malice in making the statement to DAC that Dick was "discharged." Accordingly, JBH's Motion for Summary Judgment with respect to Dick's libel claim based on JBH's communication with DAC is **GRANTED** as well.

## IV.

## CONCLUSION

Defendant's Motion for Summary Judgment as to each of Plaintiff's causes of action is hereby **GRANTED**. Accordingly, all of Dick's claims against JBH are hereby **DISMISSED**. Plaintiff's Motion for Leave to Amend (doc. 99) is also hereby **GRANTED**. Plaintiff's Cross-Motion for Summary Judgment (doc. 78), Defendant's Motion to Strike (doc. 92), Plaintiff's Motion to Strike (doc. 93), and Plaintiff's Motion Request for Judicial Notice (doc. 110) are hereby **DENIED**. The trial setting and pretrial conference set for February 28, 2011 and February 25, 2011, respectively, are hereby **VACATED**.

**SO ORDERED.**

**DATED February 23, 2011**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE